IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DANIEL ORTIZ MERAZ,** ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v.    ) | **7:09-cr-00064-KOB-JEO** |
| ) | **7:10-cv-08041-KOB-JEO** |
| **THE UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM OPINION

The cases referenced above are before the court on the motions of defendant Daniel Ortiz Meraz for production of documents (9-64, doc. 33) and to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255 (09-64, doc. 35, doc. 1).[1]  In the § 2255 motion, Meraz particularly challenges the validity of his guilty plea and resulting sentence.  Upon consideration, the court finds no need for an evidentiary hearing and that the motions are due to be denied.

### I.  FACTS AND PROCEDURAL HISTORY

On February 26, 2009, the Grand Jury for the Northern District of Alabama issued an indictment against Meraz, charging him with three courts of distribution of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c).  (9-64, Doc. 7).  Approximately two months later, April 20, 2009, the Grand Jury issued a superseding indictment, charging Meraz with the initial three counts and an

---

[1] References to "9-64, Doc. ___ " are to the document numbers assigned by the Clerk of the Court in Meraz's original criminal case (*United States v. Daniel Ortiz Meraz*, 7:09-cr-00064-KOB-JEO).  References to "Doc. ___" are to the document numbers assigned by the Clerk of the Court in Meraz's collateral matter (*Daviel Ortiz Meraz v. United States*, 7:10-cv-08041-KOB-JEO).

additional count for distribution of 50 grams or more of methamphetamine in violation of § 841(a)(1) and (b)(1)(A).  (9-64, Doc. 15).

This court determined that Meraz could not afford to retain an attorney and, therefore, appointed attorney Joseph A. Ingram to represent Meraz.  (9-64, Doc. 5).  On February 2, 2009, the court conducted a detention hearing at which Mr. Ingram represented Meraz.  (09-64, Doc. 6).  At the conclusion of the hearing, the court ordered Meraz detained without bond pending trial.  (*Id.*)  Ultimately, Meraz and the United States reached a plea agreement in which Meraz agreed to plead guilty to Count Four of the Indictment (possession with intent to distribute 50 grams or more of methamphetamine), and the United States agreed to dismiss Counts One, Two, and Three at the sentencing hearing.  (9-64, Doc. 24).  Relevant to the present petition, the plea agreement stated in part:

> In consideration of the recommended disposition of this case, I, Daniel Ortiz Meraz, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose on me. Further, <u>I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determine in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:</u>
>
> The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:
>
> (a)  Any sentence imposed in excess of the applicable statutory maximum sentence(s); and
>
> (b)  Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.
>
> <u>The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction.</u>  The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

> I, Daniel Ortiz Meraz, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.
>
> s/_____
> Daniel Ortiz Meraz

(*Id*. at 8-9) (emphasis added).

Consistent with the plea agreement, Meraz pleaded guilty to Count Four and the United States moved to dismiss Counts One, Two, and Three at the sentencing hearing. (9-64, Doc. 37). On April 29, 2009, Meraz executed a Guilty Plea Advice of Rights Certification Bilingual (English/Spanish) Version with Mr. Ingram and an official court interpreter. (Doc. 23). Then on May 11, 2009, Meraz pleaded guilty to Court Four. (9-64, Doc. 37). The plea hearing included the following exchange:

> THE COURT:     Mr. Meraz, the plea agreement that you have entered contains language waiving or giving up some or all of your rights to appeal the sentence or to challenge the conviction. Under certain conditions, you can waive or give up those rights to appeal, and such a waiver may be enforceable against you. However, if for some reason you believe that the waiver is not enforceable, then you can appeal and present that theory to the appellate court.
>
> At the time that you signed this agreement, however, did you understand that you were waiving or giving up some or all of your rights to appeal?
>
> THE DEFENDANT:   Yes.

(9-64, Doc. 37 at 9-10). This court concluded that Meraz's "plea of guilty [was] freely, voluntarily, knowingly, and understandingly offered by him and that the requisite factual basis for the plea does exist" and, therefore, accepted the plea. (*Id*. at 23).

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), and, in response, Mr. Ingram filed a sentencing memorandum on behalf of Meraz, (09-64, Docs.

3

27 & 40). In the sentencing memorandum, Mr. Ingram requested that this court impose a sentence outside the advisory Guideline range pursuant to 18 U.S.C. § 3553(a), "[g]iven Meraz's history and characteristics, and the nature and circumstances of the offense." (Doc. 27 at 1). In support, Mr. Ingram noted that Meraz was raised by a single parent, came to the United States as a teenager to attend school and live with his aunts, and sold drugs to make money to live. (*Id*. at 6). Mr. Ingram also submitted two letters from individuals Meraz knew in California, asking the court for leniency due to Meraz's strong work ethic and reliability. (Docs. 27-1 & 27-2). On September 2, 2009, this court held a sentencing hearing and subsequently sentenced Meraz to the statutory mandatory minimum for Count Four – 120-months imprisonment under § 841(a)(1) and (b)(1)(A) and 60-months of supervised release. (Doc. 31). Meraz did not appeal his conviction or sentence.

      On September 16, 2010, Meraz filed the instant *pro se* § 2255 motion, supporting brief, and his own affidavit in support of the motion. (Docs. 1, 2 & 3). In the motion, Meraz asserts that Mr. Ingram rendered ineffective assistance of counsel by

      1.    permitting Meraz to waive his appeal and post-conviction rights while knowing that he did not fully understand the terms of the waiver;

      2.    failing to properly advise Meraz of the collateral immigration consequences that result from a guilty plea; and

      3.    failing to investigate the factual and legal basis for downward departures and sentence departures.

The United States moved to dismiss the motion based on his waiver of habeas relief in the plea agreement, and, in the alternative, responded to the motion. (Doc. 7). In support, the United States submitted an affidavit from Mr. Ingram. (Doc. 7-1). Meraz replied to the response of the United States. (Doc. 8).

## II.  DISCUSSION

A.     **Motion for Production of Documents**

In the underlying criminal case, 7:09-cr-00064-KOB-JEO, Meraz filed a Motion for Production of Documents on May 7, 2010, in preparation of his § 2255 motion.  (9-64, Doc. 33). He specifically requested that the court provide him with copies of the docket sheet, transcripts from the change of plea hearing and the sentencing hearing, indictments, motions, memoranda, and the plea agreement.  (*Id*. at 2).  The motion is due to be denied because Meraz has no absolute right to these documents from the court, and he has not demonstrated that production of these documents at public expense is justified.  As an initial matter, the transcripts of the plea hearing and then sentencing hearing were not available until October 1, 2010 (9-64, Docs. 37 & 38).  Moreover, as an exhibit to his § 2255 motion, Meraz included a letter dated May 27, 2010, from Mr. Ingram, stating "Enclosed please find the following documents related to your case: 1. Docket Sheet ... 6. Indictment ... 12. Superseding Indictment ... 15. Plea Agreement."  (10-8041, Doc. 3, at 13-14).  Therefore, Meraz had received the documents that then existed from counsel.

First, Meraz's request for the transcripts was premature because he filed the request before filing his § 2255 motion and before the transcripts were available.  *See, e.g.*, *United States v. Horvath*, 157 F.3d 131, 133 (2nd Cir. 1998) ("We hold that a motion seeking transcripts pursuant to § 753(f) in relation to a contemplated § 2255 motion is not ripe until the § 2255 motion has been filed"); *Chapman v. United States*, 55 F.3d 390 (8th Cir. 1995) ("any request for a free transcript prior to the filing of a section 2255 complaint is premature," and defendant is "not entitled to copies of transcripts at government expense in advance of filing suit") (citation omitted); *Walker v. United States*, 424 F.2d 278, 279 (5th Cir. 1970) ("A federal prisoner is not entitled to obtain copies of court records at Government expense for the purpose of searching the

5

record for possible error."). Indeed, 28 U.S.C. § 753(f) provides that "[f]ees for transcripts furnished in other proceedings to persons permitted to appeal *in forma pauperis* shall also be paid by the United States <u>if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)</u>." (emphasis added). Without a § 2255 motion to consult, Meraz's request for the documents was premature. Additionally, for the reasons discussed in section B.2, the subsequently filed § 2255 motion is frivolous and, therefore, does not require production of the transcripts.

As to the remaining documents—indictments, the plea agreement, motions, memorandums, and the docket sheet—as noted, the record evidence indicates that Mr. Ingram provided these documents to Meraz more than three months before Meraz filed the § 2255 motion. (Doc. 3 at 13-14). Nevertheless, Meraz has not demonstrated that production of the documents by the court at public expense is justified or necessary, and this court's review of the § 2255 motion demonstrates that production of the documents is unnecessary. For all these reasons, Meraz's Motion for Production of Documents (9-64, doc. 33) is due to be denied.

**B.      Motion to Vacate, Set Aside, or Correct pursuant to 28 U.S.C. § 2255**

The court now turns to Meraz's motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Section 2255 provides that a prisoner in federal custody may move the court that imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. If a court finds a claim under § 2255 to be valid, then the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*. To obtain this relief on

collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255. The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### 1. Motion to Dismiss

The United States moves to dismiss the § 2255 motion on the grounds that, in the plea agreement, Meraz waived his rights to collaterally attack his conviction and sentence. (Doc. 7). The law is well-established that a criminal defendant who executes a plea agreement may waive his right to collaterally challenge his conviction and sentence under § 2255 if the waiver is made knowingly and voluntarily. *See United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). The Eleventh Circuit has advised that the waiver is made knowingly and voluntarily if either "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (citations and quotations omitted). However, the Eleventh Circuit

has also noted that a valid appeal waiver likely does not preclude § 2255 claims based on ineffective assistance of counsel when those claims challenge the validity of the plea or the waiver itself.  *See id*. at 1342 n.2 ("there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement"); *United States v. Chapa*, 800 F. Supp. 2d 1216, 1220 (N.D. Ga. 2011) ("appeal waiver likely does not waive the right to challenge the validity of the plea in which the waiver is contained or waive a claim that counsel was ineffective in advising the defendant regarding the plea").

 Here, the court is unpersuaded by the argument of the United States that Meraz waived his rights to collaterally challenge his conviction and sentence because Meraz is challenging the validity of the plea itself.  Meraz contends that the waiver should have no force because Mr. Ingram did not discuss the waiver with him prior to the plea, (doc. 2 at 5), and that "while an interpreter briefly explained a document entitled 'Advice,' on a separate date, no such interpreter was present or explained the legal consequences of the plea waiver itself." (doc. 8 at 2). Additionally, the record is not <u>manifestly</u> clear in evidencing that Meraz understood the full significance of the waiver or that this court <u>specifically</u> questioned Meraz concerning the collateral-attack waiver.  The plea colloquy focused on Meraz's waiver of his right to appeal, not his waiver of collateral proceedings:

> THE COURT: Mr. Meraz, the plea agreement that you have entered contains language waiving or giving up some or <u>all of your rights to appeal the sentence or to challenge the conviction</u>.  Under certain conditions, you can waive or give up those rights to appeal, and such a waiver may be enforceable against you.  However, if for some reason you believe that the waiver is not enforceable, then you can appeal and present that theory to the appellate court.
>
>  At the time that you signed this agreement, however, did you

8

>understand that you were waiving or giving up some or <u>all of your rights to appeal</u>?
>
>THE DEFENDANT:  Yes.

(9-64, Doc. 37 at 9-10) (emphasis added).  Simply, while it is clear that the court specifically questioned Meraz concerning the appeal waiver, the court cannot say the same about the collateral-attack waiver.  Additionally, Meraz testified in his affidavit that "[Mr. Ingram] never explained to me the difference between filing a direct appeal and a § 2255 motion." (Doc. 3 at 3).  For these reasons, the Motion to Dismiss is due to be denied, and the court will consider the merits of Meraz's claims of ineffective assistance of counsel.

    2.    **Meraz's Ineffective Assistance of Counsel Claims**

To prevail on a claim of ineffective assistance of counsel, the movant must establish:  (1) deficient performance—that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice—but for the deficiency in representation, a reasonable probability exists that the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000).  The burden of proving ineffective assistance remains with the movant at all times.  *See Chandler*, 218 F.3d at 1315 n.15.  A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  *See Strickland*, 466 U.S. at 697; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

The performance prong of *Strickland* "requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment." *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).  The proper measure of attorney

performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but, "are interested in whether the adversarial process at trial ... worked adequately." *Id*. at 386. To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers*, 13 F.3d at 386.

The prejudice prong of *Strickland* "requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher*, 368 F.3d at 1293. In the guilty-plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Similarly, in the sentencing context, a petitioner must establish a reasonable probability that, but for counsel's deficient performance, the result of the sentencing proceeding would have been different. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001).

With the above law as a backdrop, the court finds that Meraz has failed to establish his claims of ineffective assistance of counsel because he has failed to establish a deficient performance by Mr. Ingram or that he was prejudiced by these alleged deficiencies of performance.

### *Claim 1: Mr. Ingram allowed Meraz to plead guilty even though Meraz did not fully understand the terms of the appeal and collateral-attack waiver*

Meraz first argues that Mr. Ingram rendered ineffective assistance of counsel by permitting Meraz to waive his appeal and post-conviction rights while knowing that Meraz did not fully under the terms of the waiver. (Doc. 1 at 4). Meraz contends that he would not have pleaded guilty if he had fully understood the appeal and collateral-attack waiver. (*Id*.) Further, he contends that he was prejudiced by this error because "Your Honor refused to sentence [Meraz] under the statutory mandatory minimum sentence of 120 months imprisonment based on findings of fact that improperly raised Meraz's sentencing exposure with respect to the aforementioned plea agreement and sentencing factors used to determine the proper sentence in this matter." (Doc. 2 at 4) (emphasis added).

The court first notes that Meraz's prejudice argument is without merit because this court sentenced him to the statutory mandatory minimum sentence of 120-months imprisonment. (Doc. 38 at 9). The minimum term of imprisonment for the offense in Count Four (possession with intent to distribute 50 grams or more of methamphetamine) is 10 years and the maximum term of imprisonment is life. *See* 21 U.S.C. § 841(b)(1)(A). The court made *no* findings of fact in imposing Meraz's sentence because § 841(b)(1)(A) requires a minimum sentence of 10-years imprisonment. Under the law, Meraz could not have received a lesser sentence. Thus, because Meraz cannot establish a reasonable probability that, but for counsel's deficient performance, the result of the sentencing proceeding would have been different, Meraz cannot meet the prejudice prong of *Strickland* and this claim necessarily fails.

Further, the court finds that Meraz has not established that Mr. Ingram performed outside the wide range of reasonable professional assistance in explaining the terms of the waiver or

permitting Meraz to waive his appeal and post-conviction rights.  Specifically, Meraz has failed to establish any basis for the assertion that Mr. Ingram failed to explain the waiver.  Instead, the record evidence indicates that Meraz understood the terms of the plea agreement.  Meraz signed a bilingual version of the Advice of Rights Certification and initialed the section stating: "I understand that the court must be satisfied that I completely understand the plea proceeding, and that I accordingly have an *affirmative duty* to inform the court if I do not understand anything that is said or done." (Doc. 23 at 3 ¶ 6).  Consistent with this provision, the court asked Meraz, during the plea hearing, whether he had "any questions about [the guilty plea advice of rights certification] that [his] attorney was not able to answer for [him]," to which Meraz responded "no." (Doc. 27 at 4).  Additionally, the court asked Meraz whether he had "any questions regarding the meaning of the agreement or how it might operate or what affect it might have on you that Mr. Ingram was not able to answer to your satisfaction," to which Meraz answered "no." (*Id*. at 9 13-18).  As to any concern that Meraz did not understand the court's questions during the plea hearing, Meraz also verbally affirmed to the court that he would interrupt the proceedings if he did not understand any part of the hearing, and he pleaded guilty with the assistance of a federally certified interpreter.  (*Id*. at 5:1-5).  From Meraz's repeated affirmations that he understood the terms of the plea agreement and the lack of evidence supporting Meraz's allegations that Mr. Ingram was aware that Meraz did not fully understand the waiver, the court finds no merit to his contention that Mr. Ingram rendered ineffective assistance of counsel as to the waiver.

> ### Claim 2: Mr. Ingram failed to properly advise Meraz of the collateral immigration consequences of his guilty plea

Meraz also argues that Mr. Ingram rendered ineffective assistance of counsel by failing to

inform him, prior to the entry of his plea, that he would face automatic deportation after completing his sentence.  (Doc. 1 at 6).  To argue that Mr. Ingram's alleged failure to advise Meraz of the immigration consequences of his guilty plea fell below the standard of representation guaranteed by the Sixth Amendment, Meraz relies on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).  In *Padilla*, the Supreme Court held that the Sixth Amendment requires counsel to advise a client of the deportation risk of a guilty plea.  130 S. Ct. at 1486.  Meraz now asserts that he would not have pleaded guilty if he had known that he was subject to automatic deportation.  (*Id*. at 7).  Importantly, however, *Padilla* was not decided until March 31, 2010, *i.e.*, after Meraz pleaded guilty on May 11, 2009.  Thus, Meraz seeks to retroactively apply *Padilla* to the present case.

  In *Padilla*, the Supreme Court declined to consider whether the rule that counsel advise a client of the deportation risk of a guilty plea applies retroactively.  However, the Supreme Court has advised that a newly announced constitutional rule of criminal procedure applies retroactively if (1) it is not a new rule, but rather an old rule applied to new facts; or (2) it is a new rule that is substantive (not procedural in nature) or a watershed rule of criminal procedure implicating the fundamental fairness of criminal proceedings.  *See Teague v. Lane*, 489 U.S. 288, 310 (1989).  The Third Circuit, the first federal circuit court to consider the issue, ruled in June 2011, that "because *Padilla* followed directly from *Strickland* and long-established professional norms, it is an 'old rule' for *Teague* purposes and is retroactively applicable on collateral review."  *United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011).  However, the Fifth, Seventh, and Tenth Circuits have subsequently held that *Padilla* announced a <u>new</u> constitutional rule of criminal procedure, and, therefore, does <u>not</u> apply retroactively.  *See United States v. Amer*, No. 11-60522, 2012 WL 1621005, *3 (5th Cir. May 9, 2012); *Chaidez v. United States*,

655 F.3d 684, 687–94 (7th Cir. 2011) *cert. granted*, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11–820); *United States v. Chang Hong*, 671 F.3d 1147 (10th Cir. 2011).  A large number of district courts have followed the holdings of the Seventh and Tenth Circuits.  *See, e.g.*, *Ufele v. United States,* No. 86-143(RCL), 2011 WL 5830608, at *1 (D.D.C. Nov. 18, 2011); *United States v. Agoro,* Nos. CR 90–102 ML, CR 91-074 ML, 2011 WL 6029888, at *7 (D.R.I. Nov. 16, 2011), *accepted and adopted,* 2011 WL 6034478 (D.R.I. Dec. 05, 2011); *United States v. Garcia,* Nos. 2:88-cr-31–FTM-29DNF, 2:89-cr-32-FTM-29, 2011 WL 5024628, at *3 (M.D. Fla. Oct. 21, 2011); *Sarria v. United States,* No. 11-20730-CIV, — F. Supp. 2d —, —, 2011 WL 4949724, *6 (S.D. Fla. Oct. 18, 2011); *Emojevwe v. United States,* No. 1:10cv229–MEF, 2011 WL 5118800 (M.D. Ala. Sept. 29, 2011), *accepted and adopted,* 2011 WL 5118788 (M.D. Ala. Oct. 28, 2011); *United States v. Cervantes–Martinez,* No. 10cr4776 JM, 2011 WL 4434861, at *6 (S.D. Cal. Sept. 23, 2011); *United States v. Abraham,* No. 8:09CR126, 2011 WL 3882290, at *2 (D. Neb. Sept. 1, 2011).

      This court follows the developing consensus that *Padilla* announced a new rule of constitutional law, and, therefore, does not apply retroactively.  Specifically, the court is persuaded by the Seventh Circuit's reasoning in *Chaidez* that *Padilla* represents a departure from precedent rather than an old rule and that the lack of unanimity of the *Padilla* court indicates that the decision announced a new rule.  *Chaidez*, 655 F.3d at 688-89 (noting that "*Padilla* drew a concurrence authored by Justice Alito and joined by Chief Justice Roberts, as well as a dissenting opinion authored by Justice Scalia and joined by Justice Thomas").  As noted by the Seventh Circuit, the precedent prior to *Padilla* indicated that an attorney was not obligated to give advice on matters collateral to the prosecution to be competent within the Sixth Amendment.  *See id*. at 690 ("Prior to *Padilla*, the lower federal courts, including at least nine Courts of Appeals, had

14

uniformly held that the Sixth Amendment did not require counsel to provide advice concerning any collateral (as opposed to direct) consequences of a guilty plea."). Because *Padilla* announced a new rule, Meraz may not rely on it to argue that Mr. Ingram provided deficient representation by failing to provide advice about immigration consequences of a guilty plea. As such, this claim necessarily fails.

Moreover, the court again notes that Meraz signed the Advice of Guilty Right Certification and specifically initialed the section stating: "I understand that, upon completion of any term of imprisonment, I may be remanded to the custody of the United States Marshal for surrender to an authorized Bureau of Immigration and Customs Enforcement official for deportation proceedings in accordance with the Immigration and Nationality Act." (Doc. 23 at 8 ¶ 6). Further, Mr. Ingram testified that Meraz admitted to him that he was an illegal immigrant and that he and Meraz "discussed during the course of this criminal case that he would likely be deported at the conclusion of the case." (Doc. 7-1 at 2). Additionally, the Presentence Report indicates that, after his arrest, Meraz told Drug Enforcement Agency Agent Elden Willingham that he had been deported in 2002 and illegally re-entered the United States in April 2005, thus indicating his familiarity with deportation proceedings.

### *Claim 3: Mr. Ingram failed to properly investigate a legal or factual basis for downward departures and variances*

Third, Meraz contends that Mr. Ingram rendered ineffective assistance by failing to properly investigate the legal and factual basis for downward departures and variances for his sentence. (Doc. 1 at 7). Meraz specifically invokes "downward departures pursuant to U.S.S.G. § 5C1.2, § 2D1.1(b)(11), 18 U.S.C. § 3553(f)(1-5), Safety Valve, 5K1 & § 3553(e), § 3B1.1(a-c) Role in Offense, and § 3553(a) variance factors." (*Id.*) The court construes Meraz to invoke

three types of sentence reductions: (1) the so-called safety-valve reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. §§ 5C1.2, 2D1.1(b)(11); (2) the downward departure based on substantial assistance pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. 5K1.1; and (3) general downward variances pursuant to 18 U.S.C. § 3553(a).  Meraz also mentions U.S.S.G. § 3B1.1(a), however, this reference appears to be in error because this section includes sentencing enhancements, and this court did not enhance Meraz's sentence pursuant to § 3B1.1.  The United States responds that Meraz fails to submit any evidence that he was eligible for any of these sentence reductions and, therefore, cannot prove deficient performance by counsel or prejudice.

     First, Meraz clearly was not eligible for a safety-valve reduction and, therefore, he cannot establish a deficient performance or prejudice as to this issue.  (Doc. 7 at 20).  The safety-valve provision "requires a district court to sentence a defendant in certain drug-possession cases 'without regard to any statutory minimum sentence' if the defendant meets five criteria." *United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000) (emphasis added) (quoting U.S.S.G. § 5C1.2(a)).  The first of the five criteria is that "the defendant does not have more than 1 criminal history point."  § 5C1.2(a)(1).  At the time of sentencing, Meraz had at least four criminal history points and a criminal history category of III.  *See* §§ 5C1.2(a)(1) and 2D1.1(b)(11).  Additionally, as noted by the United States, Meraz did not submit that he was actually innocent of his prior convictions or challenge their applicability to the presentence calculations.  Further, within the § 2255 motion, Meraz does not challenge his prior convictions.  Because Meraz was not eligible for a safety-valve reduction, Mr. Ingram did not render ineffective assistance in failing to investigate the factual or legal basis for the reduction.

     As to a substantial-assistance departure, Meraz has not submitted any evidence indicating that Mr. Ingram rendered a deficient performance or that Meraz had helpful information to

16

provide to the United States.  Instead, the record evidence indicates that Mr. Ingram arranged for a meeting between the Government and Meraz, and that Meraz did not provide sufficient information to the Government.  During the sentencing hearing, the court questioned the prosecutor about the possibility of a substantial-assistance departure, and the prosecutor responded:  "We have exhausted everything we could with a couple of different people.  There was (sic) a couple of individuals that he described, females, and after investigation, those were users that we believe he had sold to.  There was conflict about that." (Doc. 38 at 7-8).  Consistent with these statements, the court sees no merit to Meraz's contention that Mr. Ingram failed to seek a downward departure for Meraz.  Instead, Mr. Ingram arranged for Meraz to have an opportunity to provide the United States with substantial assistance, but Meraz failed to do so.

Lastly, as to variances under § 3553(a), Meraz has failed to allege any specific facts that would justify any such variance, or that Mr. Ingram failed to investigate the possibility for such a variance.  (*Id*. at 21).  Instead, Mr. Ingram provided the court with a sentencing memorandum, detailing possible variances and grounds for a reduction in the length of the sentence as well as two letters on Meraz's behalf.  The United States also notes that because Meraz had a criminal history category of III, including a previous felony conviction for possession of a controlled substance, it is highly unlikely that this court would have found any justification for a reduction based on the factors under § 3553(a).  Further, *as a matter of law*, the court could not consider the factors under § 3553(a) to sentence Meraz below the statutory minimum.  *See United States v. Castaing-Sosa*, 530 F.3d 1358, 1361 (11th Cir. 2008) ("Reading § 3553 as a whole, § 3553(a) plainly does not confer upon the district court the authority to sentence a defendant below the statutory mandatory minimum based on its consideration of the § 3553(a) factors.").  Only a government motion for a substantial assistance downward departure pursuant to § 3553(e) and

17

U.S.S.G. § 5K1.1 would have allowed the court to sentence Meraz below the statutory minimum.

Additionally, the court notes that Meraz benefitted tremendously from an error by the United States. During the sentencing hearing, the prosecutor stated that "the government did fail in this case to recognize [Meraz's] prior in Tuscaloosa and but for that, he would be looking at twenty years in this case statutorily. And that was just out of my incompetence because I didn't see the prior convictions." (Doc. 38 at 8:5-11). Thus, by seeking a resentencing, Meraz has risked the possibility that the United States may include the omitted conviction and seek a longer sentence.

In sum, this court finds that the record evidence refutes Meraz's claims that Mr. Ingram rendered ineffective assistance of counsel. As such, an evidentiary hearing on these claims is unnecessary.

### III. CONCLUSION

For the foregoing reasons, the Motion for Production of Documents (9-64, doc. 33) and the Motion to Vacate, Set Aside, or Correct (9-64, doc. 35; 10-8041, doc. 1) are due to be denied. An appropriate order will be entered.

**DONE**, this the 14th day of June, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE